# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF SOUTH CAROLINA
# CHARLESTON DIVISION

| | |
|---|---|
| Patricia Covington Zappulla, ) | |
| ) | |
| Plaintiff, ) | Civil Action No. 2:02-3811-CWH |
| ) | |
| vs. ) | |
| ) | ORDER |
| Brian P. Walsh Moving & Storage, Inc., ) | |
| a/k/a Brian Walsh Moving & Storage, Inc., ) | |
| ) | |
| Defendant. ) | |
| _____) | |

  This matter is before the Court on the plaintiff's motion for default judgment. On August 25, 2004, the Clerk entered default against the defendant. On June 9, 2005, the plaintiff filed a motion for default judgment. To ascertain damages, the Court conducted a hearing on July 26, 2005. At the hearing, the Court instructed the plaintiff to brief the issues of whether the Carmack Amendment to the Interstate Commerce Act preempted the plaintiff's state cause of action for intentional infliction of emotional distress and whether the bill of lading issued by the defendant limited the plaintiff's damages. On August 19, 2005, the plaintiff briefed these issues. This matter is now ready for disposition.

  The plaintiff and defendant entered into an agreement to transport the plaintiff's goods from New York to Florida.[1] On July 15, 2002, the defendant issued the plaintiff an "ORDER FOR SERVICE." This "ORDER FOR SERVICE" was a Uniform Household Goods Bill of

---

[1] The parties later agreed to move the plaintiff's goods to a storage facility in Charleston, South Carolina.

Lading.[2] The plaintiff attached the bill of lading to the complaint. In this bill of lading, the defendant limited its maximum liability for lost or damaged goods to the plaintiff's declared value of her goods. The plaintiff's declared value was "Antiques/Musuem + $30,000.00." The plaintiff testified at the damages hearing that this term limited liability to the full value of the plaintiff's goods shipped, which exceeded $100,000.00.

Between the months of July and September, the defendant missed several scheduled delivery dates and would not inform the plaintiff where her property was located. In addition to missing delivery dates, the defendant notified the plaintiff that the moving charge had been increased from the original estimate of $3,390.00 to $7,995.40. In September, 2002, the defendant notified the plaintiff that her goods would be auctioned as a result of her failure to pay the moving charge. The defendant stored the plaintiff's goods in a trailer at its facility in New York.

On November 12, 2002, the plaintiff commenced this action raising the following claims: (1) breach of contract of carriage, (2) conversion, (3) injunctive relief, (4) replevin, (5) violations of federal regulations, (6) intentional infliction of emotional distress, and (7) punitive damages. On November 13, 2002, the Court temporarily enjoined the defendant from disposing of the plaintiff's goods, and on November 27, 2002, the Court issued a preliminary injunction enjoining the defendant from disposing of the goods. Under Fed. R. Civ. P. 65(c), the Court required the plaintiff to post a $500.00 bond for the temporary restraining order and a $3,279.00 bond for the preliminary injunction. Following the payment of the second bond to the Clerk of Court, the

---

[2] The plaintiff alleges that the only operative bill of lading is the bill of lading dated July 15, 2002.

plaintiff recovered her goods in April, 2003. Many of the plaintiff's goods were either damaged or missing. The plaintiff seeks to recover the lost value of her goods, travel and living expenses resulting from the defendant's failure to deliver her goods, damages resulting from emotional distress, punitive damages, and attorneys' fees. In addition, the plaintiff seeks to recover the two bonds she paid as security for the injunctions.

I.      Recovery under the Carmack Amendment.

Congress enacted the Carmack Amendment to create a national scheme of carrier liability for goods damaged or lost during transit under a valid bill of lading. Ward v. Alliance Van Lines, Inc., 231 F.3d 135, 138 (4th Cir. 2000). "The Carmack Amendment essentially adopted the common law of carriers." Id at 139. Under the Carmack Amendment, a motor carrier is liable to a shipper for the actual loss or injury to the shipper's property. 49 U.S.C.A. §14706(a)(1) (1997).[3] The damage to the plaintiff's goods total $20,364.00, and under the Carmack Amendment, the plaintiff is entitled to recover the same.

The plaintiff also seeks special damages caused by the defendant's failure to deliver her goods.[4] The Carmack Amendment did not alter the common law rule that special damages are

---

[3] The Court is applying the Carmack Amendment as it existed in 2002, when this claim accrued. See Ward v. Allied Van Lines, Inc., 231 F.3d 135, 141 (4th Cir. 2000).

[4] Section 14706(a)(1) of the Carmack Amendment allows claims for damages resulting from a delay in transit, but when a shipper and carrier agree to limit the carrier's liability to a declared value of goods established by the shipper, the shipper is bound by that limitation even when damages caused by a delay in transit are greater than damages to the goods shipped. 49 U.S.C.A. § 14706(f) (1997); see also Hubbard v. Allied Van Lines, Inc., 540 F.2d 1224, 1228 (4th Cir. 1976). As explained above, the bill of lading in this case limited the defendant's liability to the value of the plaintiff's goods which exceeded $100,000.00. The damages the plaintiff seeks in this action are less than this limitation. The bill of lading, consequently, does not reduce the plaintiff's damages.

not usually recoverable from a motor carrier. Contempo Metal Furniture Co. v. East Texas Motor Freight Lines, Inc., 661 F.2d 761, 765 (9th Cir. 1981). "Special damages are those that the carrier did not have reason to foresee as the ordinary, natural consequence of a breach when the contract was made." Id. "To recover special damages, a plaintiff must demonstrate that the carrier had notice of special circumstances from which such damages would flow." Id. A complaint must specifically state special damages. Fed. R. Civ. P. 9(g).

 First, the plaintiff seeks travel expenses resulting from the defendant's delay and then failure to deliver her goods to South Carolina. The complaint alleges that the plaintiff incurred travel expenses while attempting to meet the defendant on promised delivery dates. Moreover, the bill of lading indicates that the plaintiff's address and telephone numbers were in Florida. The Court finds that the defendant was on notice that the plaintiff did not live in Charleston and would incur hotel expenses in Charleston each time a delivery date was promised. In addition, the Court finds that the defendant was on notice that the plaintiff would have to travel to New York to retrieve her goods in the event the goods were not shipped.

 The Court, however, denies the plaintiff's claims for hotel expenses in Charleston during the proceedings in this action, hotel expenses in Florida, Georgia, Maryland, and Virginia occurring during the pendency of this action, and car rental during the plaintiff's initial trip to Charleston. The plaintiff fails to prove that these damages were the proximate and usual consequences of defendant's breach reasonably foreseeable by the defendant when it entered into the contract or that the defendant had notice that the plaintiff would incur such expenses when the contract was formed. Hector Martinez and Company v. Southern Pacific Transportation,

Co., 606 F.2d 106, 109 (5th Cir. 1979). The plaintiff has proven damages totaling $1,762.36.[5]

Second, the plaintiff seeks to recoup her living expenses incurred between the defendant's breach of the contract in July, 2002 and the recovery of her goods in April, 2003. The complaint does not allege facts putting the defendant on notice that the plaintiff's purchase of a home in Summerville, South Carolina depended on the delivery of her goods. Moreover, the plaintiff has produced no evidence indicating that she informed the defendant of such a consequence when the parties formed the contract. The Court, therefore, holds that the plaintiff is not entitled to living expenses incurred while waiting on the delivery of her goods.

II.     Intentional infliction of emotional distress.

The plaintiff alleges that the loss, damage, and attempted disposition of her household goods caused her severe emotional distress. The Carmack Amendment preempts state regulation of duties arising from the commitment of goods to the custody of carriers for shipment. Shao v. Link Cargo Limited, 986 F.2d 700, 705 (4th Cir. 1993). The plaintiff's state law claim for intentional infliction of emotional distress arises from the duties imposed on the defendant under the bill of lading, and the Carmack Amendment preempts this claim.

III.    Punitive damages.

A plaintiff may not recover punitive damages in an action based on the liability of a carrier for damage to goods in transit. See Hubbard, 540 F.2d at 1229 (a plaintiff may recover punitive damages for a breach of the duty of nondiscrimination imposed by the Carmack Amendment but not in an action based on the common law liability of a carrier for damage to

---

[5] This figure includes hotel expenses in Charleston, South Carolina during expected delivery dates, airfare to New York and hotel expenses in New York when the plaintiff had to return there to collect her goods, and car rental while in New York.

goods in transit); see also Chandler v. Aero Mayflower Transit Co., 374 F.2d 129, 137 (4th Cir. 1967). The plaintiff, therefore, is not entitled to punitive damages.

IV    Attorneys' fees.

Under 49 U.S.C.A. § 14708(d) (1997), a plaintiff is entitled to attorneys' fees if:

> (1)    a shipper submits a claim to the carrier within 120 days after the shipment is delivered or the date the delivery is scheduled, whichever is later;
> (2)    the shipper prevails in such court action; and
> (3)(A) a decision resolving the dispute was not rendered through arbitration under this section within the period provided in subsection (b)(8) of this section or an extension of such period under such subsection.

The plaintiff submitted a claim within 120 days of the scheduled delivery date, the plaintiff has prevailed in this court action, and the dispute was not arbitrated. Moreover, a shipper may recover attorneys' fees under section 14708 if the carrier fails to provide notice of the availability of arbitration. Ward, 231 F.3d at 142. The plaintiff alleged in the complaint that the defendant did not provide notice of the availability of arbitration.[6] The plaintiff, therefore, is entitled to reasonable attorneys' fees.

To determine if attorneys' fees are reasonable, the Court must consider the twelve factors set forth in Barber v. Kimbrell's, Inc., 577 F.2d 216, 226 n. 28 (4th Cir. 1978). The twelve factors are as follows: (1) the time and labor expended; (2) the novelty and difficulty of the questions raised; (3) the skill required to properly perform the legal services rendered; (4) the attorney's opportunity costs in pressing the instant litigation; (5) the customary fee for like work; (6) the attorney's expectations at the outset of the litigation; (7) the time limitations imposed by the client or circumstances; (8) the amount in controversy and the results obtained; (9) the

---

[6] A defaulting party concedes the truth of allegations made in the complaint. Ortiz-Gonzales v. Fonovisa, 277 F.3d 59, 62-63 (1st Cir. 2002).

experience, reputation, and ability of the attorney; (10) the undesirability of the case within the legal community in which the suit arose; (11) the nature and length of the professional relationship between attorney and client; and (12) attorneys' fees awards in similar cases.

The plaintiff seeks attorneys' fees totaling $39,904.38. The attorneys for the plaintiff expended a total of 224.40 hours representing the plaintiff in this case which comes to an approximate hourly rate of $177.00. Carrier liability under the Carmack Amendment raises difficult questions and a high degree of skill is necessary to pursue such a cause of action. To prevent the defendant from consigning the plaintiff's goods, the attorneys for the plaintiff had to quickly file motions for injunctions. This measure imposed time limitations on the attorneys. The attorneys obtained the full damages allowed under the law. The Court has considered the factors set forth in <u>Barber v. Kimbrell's, Inc.</u> and holds that the plaintiff's attorneys' fees are reasonable.

The Court therefore awards the plaintiff actual damages in the amount of $20,364.00, special damages in the amount of $1,762.36, and attorneys' fees in the amount of $39,904.38. The Clerk of Court is directed to release the $500 and $3,279.00 bonds to the plaintiff and to enter judgment for the plaintiff in the amount of $62,030.74.

**AND IT IS SO ORDERED**.

*C. Weston Houck*
_____
**C. WESTON HOUCK**
**UNITED STATES DISTRICT JUDGE**

November 8, 2005
Charleston, South Carolina